Case 4:16-cr-00049-RAJ-LRL  Document 365  Filed 07/22/20  Page 1 of 7 PageID# 3183



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

TIMEIKI HEDSPETH,

    Petitioner,

v.                                    CRIMINAL NO. 4:16-cr-49-6

UNITED STATES OF AMERICA,

    Respondent.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Timeiki Hedspeth's ("Petitioner") Motion Seeking Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 340.

### I. FACTUAL AND PROCEDURAL HISTORY

From October 27, 2010 to June 25, 2014, Petitioner was involved in a conspiracy to commit mail, wire, and bank fraud. She was also paid by the organizer of the conspiracy through at least August 2016. The extensive conspiracy originated in Nigeria and operated nationwide and outside the United States and proceeded in the following manner. First, the conspirators obtained legitimate cashiers checks and money orders and reproduced counterfeit versions of those financial instruments in Nigeria. Next, the conspirators solicited the personal information of "Mystery Shoppers," sent them the fake financial instruments, and instructed the "Mystery Shoppers" on obtaining funds in exchange for the counterfeit financial instruments. Once real funds were distributed in exchange for the fake financial instruments, the conspirators retained a percentage of the proceeds and the defrauded financial institutions suffered losses. Petitioner started off as a "Mystery Shopper" but became an advisor to the leaders of the conspiracy after she discovered that she was participating in a scheme to defraud financial institutions. Petitioner was also undeterred by four contacts with law enforcement between May 2011 and August 2013

1

and continued her involvement in the conspiracy for years thereafter. In total, the conspiracy impacted at least 492 identity theft victims and was assigned an intended loss amount of over $38 million. Petitioner was ordered to pay restitution in the amount of $1,294,034.52.

On August 9, 2016, Petitioner was named in a 43 count Sealed Superseding Indictment. ECF No. 9. On June 30, 2017, Petitioner was found guilty of Count 1, Conspiracy to Commit Mail Fraud, Bank Fraud, and Wire Fraud, in violation of 18 U.S.C. § 1349; Count 4 and 14, Mail Fraud, in violation of 18 U.S.C. § 1341 and 2; Counts 16 and 24, Bank Fraud, in violation of 18 U.S.C. § 1344 and 2; Count 26 and 33, Wire Fraud, in violation of 18 U.S.C. § 1343 and 2; and Counts 35 and 43, Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A and 2. ECF No. 170. On November 3, 2017, Petitioner was sentenced to a total term of 175 months as follows: 151 months on Counts 1, 4, 14, 16, 24, 26, and 33 and 24 months on Count 35, all to be served concurrently; and a term of 24 months on Count 43, to be served consecutively to all other Counts. ECF Nos. 229, 234, 235. Petitioner has been in federal custody since June 30, 2017 and her projected release date is November 30, 2029. ECF No. 361 at 6.

Petitioner filed her *pro se* Motion for Compassionate Release on May 18, 2020. ECF No. 340. The Court ordered the appropriate responses on May 19, 2020. ECF No. 345. Petitioner, through counsel, responded to the Court's order on June 12, 2020. ECF No. 354, 355. The Court received sealed filings in support of Petitioner's Motion for Compassionate Release on June 15, 2020. ECF Nos. 356, 357, 364. On June 26, 2020 the Government responded in opposition to Petitioner's Motion. ECF No. 361. Petitioner declined to file a reply to the Government's opposition. This matter is ripe for disposition.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A district court may modify a petitioner's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.*; *see also Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020) (discussing the reasons "judicial waiver of the exhaustion requirement is permissible in light of the extraordinary threat certain inmates face from COVID-19").

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. §1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. §1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A)

3

through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the Bureau of Prisons before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. §1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the Bureau of Prisons. Therefore, U.S.S.G. §1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. §1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Exhaustion Requirement

This Court has previously held that the exhaustion requirement within § 3582(c)(1)(A) may be waived in the midst of the COVID-19 pandemic. *See supra* Part II.A; *Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020). Further, Petitioner filed her administrative request for compassionate release on May 28, 2020. ECF No. 361-1 at 2. The

Bureau of Prisons denied Petitioner's request on June 15, 2020. *Id.* at 1. Therefore, Petitioner has satisfied the exhaustion requirement within § 3582(c)(1)(A).

**B. Resolution of the Defendant's Request for Compassionate Release**

*1. Consideration of the Factors Listed in 18 U.S.C. § 3553(a)*

In its consideration of the factors listed in 18 U.S.C. § 3553(a), the Court begins with Petitioner's offense conduct, which involved a long-running transnational scheme to defraud banks and steal the identities of hundreds of unwitting individuals. *See supra* Part I (describing Petitioner's offense conduct). Examination of Petitioner's criminal history also reveals a forgery conviction for her use of fake checks to make purchases at a department store in Texas. ECF No. 347 at ¶ 69. During the period of these offenses, Petitioner's financial fraud was more consistent than any legitimate employment. *Id.* at ¶¶ 92–96 (listing part-time and undisclosed employment from 2009 to Summer 2016); *see also id.* at ¶ 101 (documenting that Petitioner did not report her earnings from the conspiracy for tax purposes). In other words, Petitioner was supporting herself almost exclusively through financial fraud for the better part of a decade. Such intricate and persistent conduct implicates the need for a sentence that reflects the seriousness of the offense and respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A). Further, specific deterrence is necessary based on Petitioner's unrepentant reactions after discovering that she was participating in a transnational fraud conspiracy and being confronted about counterfeit financial instruments by law enforcement. *Id.* § 3553(a)(2)(B). Petitioner's sentence must also protect the public from future financial fraud and identity theft. *Id.* § 3582(a)(2)(C).

*2. Evaluation of "Extraordinary and Compelling Reason"*

At the outset of the analysis of whether Petitioner has presented an extraordinary and compelling reason, the Court is advised against grants of compassionate release when the

petitioner is a danger to the safety of any person or to the community. U.S.S.G. § 1B1.13(2). Further, a petitioner's release plan should account for the potential for a subsequent offense once he or she is out of the custody of the Bureau of Prisons. *See Coleman*, 2020 WL 3039123, at *4–*5.

Based on the filings discussing her Motion for Compassionate Release, it is clear that Petitioner still presents a danger to the community. Although Petitioner has a minimum security classification, she was disciplined for Refusing a Work/Program Assignment and Refusing to Obey an Order as recently as January 31, 2020. ECF No. 361-1 at 4. During the period of the instant offenses, Petitioner had similar issues that prevented her from sustaining legitimate employment. *See* ECF No. 347 at ¶¶ 92–96. Though Petitioner claimed that she lost these jobs because the companies were downsizing or her positions were terminated, employment records at one of her short-term stints reveal she was fired at least once for insubordination and otherwise failing to abide by the rules of the workplace. *Id.* at ¶ 95. Most concerningly, Petitioner wishes to work in a job involving "accounting and business management" upon release. ECF No. 354 at 25; *see also* ECF No. 364 at 9 (claiming that Petitioner will "pick up my business...as well as assist my sister in the running of her business [and] find employment in the law field"). These employment arrangements would be unacceptable when considering that Petitioner "is prohibited from engaging in any employment where she has access to the identifying information of others" as a condition of her supervised release. ECF No. 234 at 4; *see also United States v. Dinning*, 2020 WL 1889361, at *3 (E.D. Va. Apr. 16, 2020) (denying compassionate release because the petitioner "poses an ongoing danger to the community" based on his stated desire to return to the same positions of trust that facilitated his offense).

The Court has reviewed Petitioner's medical records in support of her Motion for Compassionate Release, which show that she is being treated for number of non-life-threatening conditions by the Bureau of Prisons. However, none of Petitioner's conditions are found among the Centers for Disease Control's list of medical conditions that increase the risk of severe COVID-19 infection. ECF No. 364 at 10–11 (listing a series of non-life-threatening conditions); ECF No. 355 (claiming Petitioner has chronic health conditions as a general matter without discussing any of the conditions with particularity); see *United States v. Lewellen*, 2020 WL 2615762, at *4 (N.D. Ill. May 22, 2020). Further, Petitioner is just 42 years old and her records show that she is receiving adequate medical care at this time. Moreover, the purposes of Petitioner's sentence remain unfulfilled and the Court is unpersuaded that the threat she poses to the community has subsided after a relatively short period of incarceration. Therefore, the Court finds no extraordinary and compelling reason for compassionate release.

### IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **DENIED**. The Clerk is **DIRECTED** to send a copy of this Order to Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Newport News, Virginia
July 22, 2020

/s/
Raymond A. Jackson
United States District Judge