IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



TIMEIKI HEDSPETH,
        Petitioner,

v.                                            **CRIMINAL ACTION NO. 4:16-cr-49-6**

UNITED STATES OF AMERICA,
        Respondent.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Tiemeiki Hedspeth's ("Petitioner") motion, through counsel, pursuant to 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence. ECF No. 350. The Government opposed the motion and Petitioner replied. ECF Nos. 373, 380. The matter is now ripe for judicial determination. Having reviewed the motion and filings, the Court finds that a hearing is not necessary to address Petitioner's motion. *See* 28 U.S.C. § 2255(c). For the reasons set forth below, Petitioner's § 2255 Motion is **DENIED**.

### I.    FACTUAL AND PROCEDURAL HISTORY

On August 9, 2016, Defendant and seven other co-defendants were named in a forty-three-count Superseding Indictment charging mail, wire and bank fraud. Petitioner was charged with Conspiracy to Commit Mail Fraud, Bank Fraud and Wire Fraud, in violation of Title 18 U.S.C. §§ 1349, 1344, 1342 and 1343 (Count One), Mail Fraud, in violation of Title 18 U.S.C. § 1341 (Counts Four and Fourteen), Bank Fraud, in violation of Title 18 U.S.C. § 1344 (Counts Sixteen and Twenty-Four), Wire Fraud, in violation of Title 18 U.S.C. § 1343 (Counts Twenty-Six and Thirty-Three), and Aggravated Identity Theft, in violation of Title 18 U.S.C. § 1028(a)(1) (Counts Thirty-Five and Forty-Three). ECF No. 9. On December 2, 2016, Petitioner plead not guilty to all nine counts. On June 27, 2017, the Court commenced a four-day trial. ECF Nos. 165-169. On July

1

30, 2017, the Jury returned a guilty verdict on all nine counts of the Superseding Indictment. ECF No. 170. According to the Presentence Report ("PSR"), from October 27, 2010 to June 25, 2014, and based on the Jury's findings, Petitioner was involved in a conspiracy to commit mail, wire, and bank fraud. ECF No. 221 at ¶ 10. Specifically, Petitioner was involved in a scheme with seven co-defendants in which they obtained funds through fraudulent means by recruiting individuals via email to be "mystery shoppers" and to use their own bank accounts to negotiate counterfeit financial instruments, consisting mainly of counterfeit cashier's checks and counterfeit Postal money orders, and further sending the funds by money transmission service for the conspirator's own use and benefit. *Id.* at ¶ 11. The "mystery shoppers," and victims, would receive financial instruments and then use such instruments to evaluate the services of certain money transmission services including Western Union and Money Gram. *Id.* at ¶ 12. Petitioner and her co-defendants told victims that this was a legal and legitimate employment opportunity. Petitioner would then obtain legitimate cashier's checks from financial institutions and legitimate postal money orders and provide them to other conspirators. *Id.* at ¶ 13. The conspirators would then use the legitimate financial instruments to make counterfeit versions, which was done largely in Nigeria, resulting in counterfeit instruments being sent via the mail or electronic means to conspirators in the U.S. In 2010, Petitioner started out as a "Mystery Shopper" but then realized that the checks she was provided were fraudulent and she confronted the sender through email. *Id.* at ¶ 22. Rather than be a victim, she elected to become a partner in the conspiracy and advised her co-defendants on how to improve the scheme. *Id.* In all, there were 492 victims and between October 2010 and June 2014, Petitioner is attributed with an intended loss amount of $38,014,380.00. *Id.* at ¶ 26.

According to the PSR, Petitioner was assessed a Criminal History Category of II, total offense level 33, and had recommended guideline sentencing range of 151-188 months, plus 24 to 48

months for Counts 35 and 43, in prison. *Id.* at ¶ 106-107. Petitioner objected to paragraphs 10-28 of the PSR and argued that she was actually innocent of the charges. ECF No. 224. However, at the sentencing hearing, the Court overruled Petitioner's objections and found that the contested paragraphs reflected the evidence admitted at trial and the jury's findings. ECF No. 229. The Court sentenced Petitioner to 151 months on Counts 1, 4, 14, 16, 24, 26, and 33 to run concurrently, a concurrent sentence of 24 months on Count 35, and a consecutive sentence of 24 months on Count 43. ECF 234. Petitioner was also ordered to pay restitution, jointly and severally with her co-defendants, in the amount of $1,294,000. ECF 232.

On November 3, 2017, Petitioner timely appealed to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). ECF No. 236. However, on February 14, 2019, the Fourth Circuit affirmed Petitioner's convictions and sentence. *See United States v. Hedspeth,* 760 Fed. Appx. 236 (4th Cir. 2019); *see also,* ECF No. 303. The Supreme Court denied her petition for certiorari on May 20, 2019. *See Hedspeth v. United States,* 139 S. Ct. 2626 (2019); *see also,* ECF No. 314.

On May 28, 2020 Petitioner filed the instant Motion to Vacate Sentence under 28 U.S.C. § 2255. ECF No. 350. Petitioner makes two claims: (1) Ineffective assistance of counsel, and (2) Court's error at sentencing. *Id.* The United States opposed the motion on June 26, 2020. ECF No. 361. On November 30, 2020, Petitioner filed a reply. ECF No. 380.

## II. LEGAL STANDARD

### A. Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C.

3

§ 2255. In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Additionally, *pro se* filers are entitled to more liberal construction of their pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 Motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See Untied States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

### B. Ineffective Assistance of Counsel Claim

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). An ineffective assistance of counsel claim is properly raised on a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance. *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient. *Id.* at 687. Counsel's errors must have been so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

5

would have been different." *Id.* at 694. The Supreme Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If a petitioner cannot meet either component of the *Strickland* test, the ineffective-assistance claim will fail. *Id.* at 700. The Court need not address both components of the test if petitioner makes an insufficient showing on one prong. *Id.* at 697.

### III. DISCUSSION

Petitioner claims two main grounds for relief. First, Petitioner claims four reasons for ineffective assistance of counsel: (1) failure to inform her of the consequences of pleading guilty versus going to trial; (2) failure to investigate; (3) failure to attempt to negotiate a favorable plea agreement; and (4) failure to raise challenges at sentencing. ECF No. 350 at 10-16, 37-40. Relatedly, Petitioner also claims that counsel failed to review, discuss, and explain the PSR with Petitioner prior to the sentencing hearing, argue for mitigation of punishment depriving her of effective assistance of counsel and a fair sentencing. *Id.* at 37-38. Second, Petitioner claims that the Court used an incorrect criminal history and improper offense level for sentencing, improperly ordered restitution, the prosecutor failed to prove guilt beyond a reasonable doubt, and, the Court made "bad evidentiary rulings" depriving her of the right to cross examine witnesses and present her defense. *Id.* at 16-36.

### A. Ineffective Assistance of Counsel

First, Petitioner argues that her attorney was ineffective for failure to inform her of the consequences of pleading guilty versus going to trial. ECF No. 350 at 10-11. Specifically, Petitioner claims that counsel failed to consult with her alleging that counsel made "no phone calls,

proper mailings, nor emails." *Id.* at p. 12. Above all, Petitioner claims, that counsel failed to inform her of the consequences of pleading guilty and did not "consult and explain…strategy and prospects of success, … [as well as] the likely result in the sentence she would receive." *Id.* at 13. The Court finds that this claim is without merit. The record shows that counsel adequately communicated with Petitioner in writing. According to a letter dated June 14, 2017, counsel informed Petitioner of all the evidence counsel was aware of that was against her based on his investigation and discovery. *See Id.* at Attachment 1, Exhibit 4. As a result, counsel presented a best-case scenario strategy stating that if she plead guilty, she would "probably get around 5 years," but that if she went to trial and lost she would "get at least ten years." *Id.* Moreover, Petitioner acknowledges that she understood the consequences she wrote in the instant petition that if she pled guilty, she would get "between 5 to 10 years." ECF No. 350 at 14. Therefore, Petitioner's claim that counsel failed to inform her of the consequences of going to trial is unsupported by the record.

Second, Petitioner argues that her counsel failed to properly investigate. ECF No. 350. Specifically, Petitioner alleges that counsel failed to file any substantive pretrial motions, failed to review evidence and discovery with her which she claims would have allowed them to properly evaluate her case *Id.* at 12-14. The Court finds that this claim is unsubstantiated. It is well established precedent that counsel has discretion to make best decisions possible regarding the strategic decisions of the case which include discovery, pretrial motions, and investigation. Moreover, there is a strong presumption that counsel's trial tactics are in the best interest of their client and those which are not utilized are because they are without merit, rather than neglect. *See Harrington v. Richter*, 131 S. Ct. 770, 790 (2011) (holding that "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than

sheer neglect."); *see also, United States v. Morris*, 917 F.3d 818 (4th Cir. 2019) ("In analyzing the deficient performance prong of an ineffective assistance of counsel claim, the reviewing court's scrutiny of defense counsel's performance is highly deferential, and the reviewing court starts with a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.").

According to Petitioner's counsel affidavit, after Petitioner made her initial appearance, arraigned, and released on bond and returned to Texas, counsel sent Petitioner at nine separate envelopes containing discovery documents before trial. *See* ECF No. 373 at Attachment 1, Exhibit 1. In this letter, counsel writes, that in addition to emails, the evidence consisted of phone records, blank money orders found in her apartment after she was evicted, passport photos, bank records and the testimony of a postal inspector and Department of Homeland Security (DHS) officials who would testify that she was warned to stop being involved in the fraud. *Id.* With respect to motions for discovery, the Court finds that there was a Discovery Order in place and the parties met their obligations of exchanging discovery. Moreover, in his affidavit counsel stated that he "filed all the motion which I could make as well as make all objections which I deemed were prudent in the case. If I did not argue it or file it, it is because it had no merit." *See* ECF No. 373 at Attachment 1. In her reply, however, Petitioner alleges that counsel failed to "utilize documents from the government in cross-examination to impeach certain prosecution witnesses." ECF No. 380 at 19-21. At the same time, Petitioner states that counsel did cross-examine and attempt to impeach a key witness, Petitioner's ex-husband, at trial. *Id.* Yet, Petitioner maintains that counsel did not conduct a thorough investigation of the key witness. Moreover, Petitioner claims that counsel did not call an expert witness or fact witness in rebuttal to the Government's case. *Id.* However, Petitioner has failed to establish how counsel erred in calling a fact witness and that their testimony

would be helpful to the Petitioner's case. The ultimate decision of whether to call them to testify, in light of the Government's evidence and anticipated cross-examination, is a strategic decision left to counsel's discretion. In, all Petitioner has failed to show how counsel failed to investigate, conduct adequate discovery, or neglected to.

Third, Petitioner argues that counsel failed to attempt to negotiate a favorable plea agreement. Specifically, Petitioner alleges that counsel "repeatedly sent her . . . plea agreements," and urged her to plead guilty, but also failed to negotiate a better plea agreement. ECF No. 350 at 13-16. The Court finds that this claim is unsubstantiated by the record. On March 7, 2017, counsel sent to Petitioner with a copy of her co-defendants, Christie Easter and Toheeb Odoffin's, Plea Agreements. *See* ECF No. 373 at Attachment 1, Exhibit 2. Counsel communicated to Petitioner that the "[t]he Government has offered you the same deal," and that she had until March 17, 2017 to accept the offer. *Id.* Counsel recommended that she accept the offer, but she chose to proceed to trial. *Id.* In addition, on April 20, 2017, a letter was sent to counsel via email, memorializing the terms of the Government's continuing and extended another offer in which Petitioner could plead guilty to Count One and Forty-Three of the Superseding Indictment and the Government would dismiss the remaining seven counts. *See* ECF No. 373 at Attachment 2. Counsel also communicated this plea offer to Petitioner. Finally, on June 27, 2017, the Court conducted a *Frye* inquiry of the Petitioner where "counsel made statements on the record regarding plea offers made." *See* ECF 165. Petitioner choose to refuse the guilty plea to Count One and Forty-Three, and, instead, decided to move forward with trial understanding that the she could be convicted on all nine counts. Therefore, the Court finds that Petitioner failed to show that counsel failed to negotiate a better plea offer. Rather, the Court finds that the Government's plea offer to Petitioner was consistent to those offered to her co-defendant and that counsel effectively communicate the

9

most favorable plea offers to Petitioner on multiple occasions. Ultimately, Petitioner refused the best plea offer.

Finally, Petitioner claims that counsel failed to review the PSR and did not challenge the two criminal history points under U.S.S.G. § 4A1.1(d), her criminal history category, and the intended loss rather than actual loss figure. ECF No. 350 at 2. The Court also finds that these claims are without merit. Notably, Counsel did in fact object to all of the offense conduct outlined in the PSR and asked that Petitioner receive a sentence similar to that of her co-defendants. *See* ECF 224. At the sentencing hearing, Petitioner confirmed that she consulted with counsel prior to the hearing and that she was satisfied with the advice and counsel she received. *See* ECF No. 224; *see also,* ECF No. 256; Sent. Hr. Tr. 2:15-2:20. Furthermore, Petitioner made no statement that she had not reviewed the PSR nor did she raise any additional issues. *Id.* At the hearing, the Court acknowledged counsel's objections but overruled them finding that ". . . [Petitioner] has an affirmative duty to present something to show that the Presentence Report is inaccurate but, in this case, we know that the jury has heard the facts set forth in those paragraphs and the defendant's been found guilty beyond a reasonable doubt." ECF No. 256; Sent. Hr. Tr. 3:25-4:10. Therefore, the paragraphs 10-28 in the PSR were based on the jury's guilty verdict. Moreover, the sentencing enhancement were based on the offense conduct in the PSR which were affirmed on appeal before the Fourth Circuit. On appeal, the Fourth Circuit held that Petitioner because "... failed to carry her burden," . . . "the Court was 'free to adopt the findings of presentence report without more specific inquiry or explanation." *Hedspeth*, 760 Fed. Appx. 236, 240, (Citing *United States v. Terry* 916 F.2d 157, 162 (4th Cir. 1990)). Furthermore, the Fourth Circuit held that "she failed to carry her burden of rebutting the PSR's allegation that her participation in the underlying conspiracy overlapped with her supervision term," and thus, the two points under U.S.S.G. § 4A1.1(d) were

properly applied. *United States v. Hedspeth,* 760 Fed. Appx. 236, 240 (4th Cir. 2019). As a result, her criminal history category was properly calculated. With respect to the amount of restitution, the Fourth Circuit also affirmed the district court's calculation and held that "[b]ased on the value of counterfeit checks and money orders attached to over 1600 emails received by [Petitioner], the PSR indicated an intended loss of approximately 38 million. We conclude that this was a reasonable estimate of the intended loss and that the district court therefore committed no plain error in imposing a 22-level enhancement for loss exceeding $25 million." *Hedspeth,* 760 Fed. Appx. at 240. Therefore, the Court finds that since Petitioner's claims were already "fully considered on direct appeal," she cannot use her collateral attack to relitigate the same issues. *Boeckenhaupt v. United States,* 537 F.2d 1182, at 1183 (4th Cir. 1976).

In all, the Court finds that Petitioner's claim of ineffective assistance of counsel fails because she has not shown that her counsel's performance was deficient. Therefore, Petitioner cannot show that she was prejudiced.

### B. Court's Error in Sentencing

Second, Petitioner claims that the Court used an incorrect criminal history and improper offense level for sentencing, improperly ordered restitution, the prosecutor failed to prove guilt beyond a reasonable doubt, and, the Court made "bad evidentiary rulings" depriving her of the right to cross examine witnesses and present her defense. *Id.* at 16-36. However, as noted above in Section III.A, Petitioner raised these claims on direct appeal with the Fourth Circuit, which affirmed the Court's rulings. Therefore, these claims are procedurally defaulted.

A Petitioner may raise a procedurally defaulted claims if she can "establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice resulting therefrom.'" *United States v. Fugit,* 703 F.3d 248, 253–54 (4th Cir. 2012) (quoting *Bousley v. United States,* 523 U.S. 614,

11

621–22 (1998)); *see also, United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). In this case, Petitioner has not established actual innocence by clear and convincing evidence. Moreover, Petitioner has not established actual cause and prejudice, because she has not established the Court made any errors as the Court's rulings were affirmed by the Fourth Circuit. Therefore, there are no errors that "… infected [her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Petitioner also claims that the Court erred in the restitution order filed on November 3, 2017. ECF No. 350 at 28-31. In the restitution order, the Court ordered that Petitioner was liable jointly and severally with her co-defendants, to pay $1,294,000. ECF 232. This encompassed the same amount ordered against the other co-defendants. *Id.* At the sentencing hearing, Petitioner did not challenge the restitution amount, but, on appeal, Petitioner argued that the Court should have considered her financial circumstances. However, the Fourth Circuit held that her "financial circumstances were irrelevant to the court's restitution determination." *Hedspeth,* 760 Fed.Appx. at 240. Therefore, this issue was decided on direct appeal and cannot be relitigated.

Finally, Petitioner alleges the court erred in denying her Rule 29 motion, and in overruling her objection to the introduction of "non-original" copies of checks and money orders. ECF No. 350 at 34-35. On direct appeal, Petitioner raised this claim and the Fourth Circuit held that "the Government produced ample evidence of [Petitioner's] participation in the conspiracy," . . . and, "sufficient evidence from which the jury could find that [Petitioner] used the victims' means of identification." *Hedspeth*, 760 Fed.Appx. at 238, 239. In addition, the Fourth Circuit stated that, "[b]ecause [Petitioner] did not genuinely dispute the authenticity [of the checks and money orders], the duplicates were 'admissible to the same extent as the original[s].'" *Id.* Therefore, this claim was also raised on direct appeal and it is dismissed.

In all, Petitioner is procedurally defaulted from raising these claims because she raised them on direct appeal, and she has failed to establish cause and prejudice for raising them in the instant motion. Accordingly, these claims are dismissed.

## IV. CONCLUSION

For the reasons stated above, Petitioner's § 2255 Motion is **DENIED**.

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). This means that Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Petitioner's claims are based upon incorrect interpretations of statutory provisions and judicial precedent. As such, Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, and a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date. The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
February 4, 2021

/s/
Raymond A. Jackson
United States District Judge

UNITED STATES DISTRICT JUDGE

13