**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**TIMEIKI HEDSPETH,**

**Petitioner,**

**v.** **CRIMINAL ACTION NO. 4:16-cr-49(6)**

**UNITED STATES OF AMERICA,**

**Respondent.**

***MEMORANDUM OPINION AND ORDER***

Before the Court is Timeiki Hedspeth's ("Petitioner") Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act ("First Step Act"). ECF No. 471 ("Pet'r's Mot."). The Government opposed the motion. ECF No. 477 ("Resp. Opp."). Petitioner replied. ECF No. 478 ("Pet'r's Reply"). This matter is now ripe for judicial determination. For the reasons stated herein, Petitioner's motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

On April 12, 2017, Petitioner and her co-defendants were named in a forty-three-count Superseding Indictment, which charged Petitioner with the following nine counts: Conspiracy to Commit Mail Fraud, Bank Fraud, and Wire Fraud, in violation of 18 U.S.C. § 1349 (Count One); Mail Fraud, in violation of 18 U.S.C. §§ 1341, 2 (Counts Four and Fourteen); Bank Fraud, in violation of 18 U.S.C.§§ 1344, 2 (Counts Sixteen and Twenty-Four); Wire Fraud, in violation of 18 U.S.C. §§ 1343, 2 (Counts Twenty-Six and Thirty-Three); and Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A, 2 (Counts Thirty-Five and Forty-Three). ECF No. 9. On June 30, 2017, a jury found Petitioner guilty of all nine counts. ECF No. 170. On November 6, 2017,

the Court sentenced Petitioner to 175 months imprisonment followed by five years of supervised release. ECF No. 234.

Petitioner initially filed a Motion for Compassionate Release *pro se* on May 18, 2020, which this Court denied on July 22, 2020. ECF Nos. 340, 354, 365. Petitioner later filed another *pro se* Motion for Compassionate Release on July 15, 2021, which this Court denied on July 20, 2021. ECF Nos. 404-405. In response, Petitioner filed a Motion for Reconsideration on December 9, 2021, which this Court denied. ECF Nos. 411, 437. On November 3, 2023, Petitioner filed a Motion to Reduce her Sentence, and this Court subsequently reduced Petitioner's sentence from 175 months to 159 months. ECF Nos. 452, 464. Petitioner began home confinement in 2024 and has a projected release date of October 13, 2027. *See* Resp. Opp. at 3; Pet'r's Mot. at 2. On April 23, 2026, Petitioner filed the instant Motion for Compassionate Release *pro se*. Pet'r's Mot. On September 4, 2026, the Government filed its response in opposition. Resp. Opp. On September 10, 2026, Petitioner filed her reply to the Government's response. Pet'r's Reply. Accordingly, this matter is ripe for judicial determination.

According to the Presentence Investigation Report ("PSR"), around 2012, law enforcement investigated a Nigeria-based advance fee scheme that operated in the United States and internationally. ECF No. 456 ¶ 11 ("PSR"). The conspirators recruited individuals via email under the guise of a legitimate business enterprise. *Id.* ¶ 12. The recruits used their bank accounts to negotiate counterfeit cashier's checks, money orders, and more. *Id.* ¶ 11. They then transmitted the fraudulently obtained funds to the conspirators. *Id.* Petitioner began as a recruit in 2010, but upon realizing the business was fraudulent, she opted to be a partner in the scheme. *Id.* ¶ 22. Petitioner received multiple payments from the fraud until around August 2016. *Id.* ¶ 27. She was attributed with an intended loss amount of $38,014,380, and there were at least 492 people fell

victim to the scheme. *Id.* ¶¶ 26, 28.

## II. LEGAL STANDARD

### A. The Threshold Requirement

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the BOP bring a motion on their behalf: (1) exhaust administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§3582(c)(1)(A) outlines two routes—one of which does not require exhaustion of administrative remedies."). In other words, a petitioner may satisfy the threshold requirement if they "request[ ] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[ ] all administrative rights to appeal the Bureau's decision or wait[ ] 30 days from the date of their initial request to file a motion in the district court." *Id.* Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release from the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied). Moreover, the threshold requirement is a non-jurisdictional claim processing rule and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

**B. The Compassionate Release Standard**

As amended by the First Step Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The phrase "extraordinary and compelling" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. U.S. SENT'G GUIDELINES MANUAL § 1B1.13 n.1 (U.S. SENT'G COMM'N 2021). Before the First Step Act was passed, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S. SENT'G GUIDELINES MANUAL § 1B1.13, cmt. 1(A)-(C) (U.S. SENT'G COMM'N 2018). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at cmt. 1(D). Use of the "catch-all provision" prior to the First Step Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

U.S.S.G. § 1B1.13 is now outdated, however, following the passage of the First Step Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("[W]here the [Sentencing] Commission fails to act, then courts make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with statutory language."). A petitioner's rehabilitation standing alone does not provide sufficient

grounds to warrant a sentence reduction. 28 U.S.C. §994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). Ultimately, compassionate release motions "ask courts to balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other." *United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

Courts liberally construe documents filed *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As Petitioner was not represented by counsel when she filed the instant Motion for Compassionate Release, a less stringent standard of review applies.

## III. DISCUSSION

### A. The Threshold Requirement

The Court finds that Petitioner satisfied the threshold requirement. Petitioner filed her administrative request for compassionate release on May 28, 2020. ECF No. 361-1 at 2. The Bureau of Prisons denied Petitioner's request on June 15, 2020. *Id.* at 1. More than 30 days have passed since petitioner filed her request, therefore, Petitioner has satisfied the exhaustion requirement within § 3582(c)(1)(A).

### B. Petitioner's Compassionate Release Request

The Court now addresses whether Petitioner has set forth extraordinary and compelling reasons to modify her sentence. Petitioner argues that compassionate release is warranted because (1) there are significant sentencing disparities between her sentence and similarly-situated co-defendants; (2) she has undergone exemplary rehabilitation while on home confinement; (3) she was sexually abused by a Correctional Officer; and (4) she has a critical role as a caregiver for her ill mother. Pet'r's Mot. at 1.

### 1. Sentencing Disparities

The United States Sentencing Guidelines recognize that an "unusually long sentence" may be considered in determining whether a defendant has an extraordinary and compelling reason to decrease their sentence. U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b)(6) (U.S. SENT'G COMM'N 2025). Specifically, "[i]f a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a *change in the law*. . . may be considered." *Id.* (emphasis added); *see also United States v. Moody*, 115 F.4th 304, 311 (4th Cir. 2024) (stating, "a district court faced with a compassionate release motion may consider the disparity between the defendant's sentence and what he would receive today due to changes in sentencing law").

However, Petitioner's argument is not based on a change in the law. Petitioner argues that she received the longest sentence among her co-defendants, "despite having a comparable or lesser role than others." Pet'r's Mot. at 1. She further states that other defendants have also received earlier release, which has widened the disparity. *Id.* at 2-3. The Government responds that there is no gross sentencing disparity in this case, because Petitioner was the only defendant to deny guilt and proceed to trial. Resp. Opp. at 4; *see also* 4:16-cr-49(1), (2), (3), (4), (5), (7), (8); ECF No. 74. Petitioner replies that "the sentencing landscape has materially changed since the time of her original sentence," but offers no support for this claim. Pet'r's Reply at 2.

As stated above, § 1B1.13(b)(6) allows a court to consider compassionate release where, among other factors, a defendant has served at least 10 years of their sentence. U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b)(6) (U.S. SENT'G COMM'N 2025). Currently, Petitioner is several months shy of this requirement. *See* ECF No. 477-1 at 2. Moreover, Petitioner's original sentence was at the lowest end of the guideline provisions, and her current reduced sentence falls below that range. *See* PSR ¶¶ 106-107. Since her sentence is well-below the statutory maximums, and at the

low end of the Sentencing Guidelines, Petitioner cannot show that her sentence is unusually long. *See e.g.*, 18 U.S.C. §§ 1341, 1343, 1344; U.S. SENT'G GUIDELINES MANUAL § 5A (U.S. SENT'G COMM'N 2025). Further, Petitioner has not identified a change in the law that justifies compassionate release; instead, she focuses on her incomparable codefendants and factors that cannot be considered for purposes of reducing her sentence. Pet'r's Mot. at 1-3. Accordingly, this Court finds that Petitioner's sentence is not "unusually long" and no disparity exists.

**2. Rehabilitation**

The Court has considered Petitioner's post-sentencing conduct and rehabilitative efforts. *See Concepcion v. United States*, 597 U.S. 481, 496 (2022) ("The text of the First Step Act does not so much as hint that district courts are prohibited from considering evidence of rehabilitation, disciplinary infractions, or unrelated Guidelines changes."). Petitioner states that she has "taken significant steps toward rehabilitation," including maintaining employment, completing programs and self-improvement courses, and complying with her supervision requirements.[1] Pet'r's Mot. at 6. However, a defendant's rehabilitation alone is not an extraordinary and compelling reason for compassionate release. U.S. SENT'G GUIDELINES MANUAL § 1B1.13(d) (U.S. SENT'G COMM'N 2025); 88 Fed. Reg. 28254 (May 3, 2023) (explaining that under 28 U.S.C. 944(t), "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement"); *United States v. Coley*, 827 F. Supp. 3d 742, 751 (E.D. Va. 2026) (stating that "rehabilitation alone cannot be an extraordinary and compelling reason") (citing *United States v. Muhammad*, No. 3:14cr55, 2021 WL 3779632, at *3 (E.D. Va. Aug 25, 2021), aff'd sub nom. No. 21-7354, 2022 WL 541619 (4th Cir.)).

---

[1] The Court has not been advised of any supervision Defendant is under. In fact, the Court has never been informed that the Bureau of Prisons placed Defendant on home confinement.

The Government argues that though Petitioner "deserves credit for her efforts," she has "failed to take any responsibility for her extensive criminal conduct" until this point. Resp. Opp. at 9. The Government further notes that Petitioner has not provided details on her employment or how she is financing her education. The financial information is especially salient since Petitioner "has not voluntarily paid a single dollar towards restitution to the 492 victims." *Id.* The Government asserts that because there are no impediments to her work or education while on home confinement, Petitioner fails to demonstrate that her rehabilitation efforts constitute extraordinary and compelling circumstances. *Id.* Petitioner replies that she "has not received documentation or an order informing her that she was required to begin making restitution payments during her period of home confinement." Pet'r's Reply at 5. Therefore, she asserts that she has not knowingly refused payment, and the fact that she has not voluntarily paid restitution is not evidence of refusal to accept responsibility. *Id.* Additionally, she states that rehabilitation is not the sole basis she has offered in her Motion for Compassionate Release. *Id.* at 7.

The case law Petitioner cites in the instant motion are not analogous to her situation. For example, she states that *United States v. Decator* "grant[ed] release based in part on extensive rehabilitative efforts." Pet'r's Mot. at 7. However, the petitioner in *Decator* "participated in over 1,500 hours of programming and . . . completed more than 70 courses." *United States v. Decator*, 452 F. Supp. 3d 320, 325 (D. Md.), aff'd sub nom. *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). He also had a minimal disciplinary record, community support, employment offers, and compelling support letters. *Id.* at 325-326. Most importantly, the sentencing standards had changed by the time the petitioner sought compassionate release. *Id.* at 326 (stating, "if sentenced today, Decator would likely receive at least 30 fewer years on his sentence").

In *Redd*, another case Petitioner cites, the petitioner's sentence was described by the court as "grossly disparate relative to what a defendant today would receive for comparable conduct" and "grossly disparate to the reduced § 924(c) sentence received pursuant to the First Step Act." *United States v. Redd*, 444 F. Supp. 3d 717, 728 (E.D. Va. 2020). Petitioner Redd also showed a pattern of rehabilitation over 20 years, as compared to less than 10 years in the instant case. *Id.* at 729. Redd "devot[ed] hundreds of hours to vocational programs, assist[ed] others in their rehabilitative efforts, exhibit[ed] solid work habits, car[ed] for mental health inmates, and . . . exceed[ed] his supervisor's expectations." *Id.* In the instant case, Petitioner has not provided verification for her strongest claims of rehabilitation (employment and education),[2] and her circumstances are different than most petitioners who are in prison custody, rather than being on home confinement. The Court finds Petitioner's rehabilitation argument unconvincing for § 3553(a) purposes.

In this Court's assessment of the § 3553(a) factors, Petitioner's post-sentencing rehabilitation efforts do not outweigh the considerations that led the Court to sentence her to 159 months. The seriousness of Petitioner's fraudulent conduct remains unchanged, and her employment and education do not rise to the level of extraordinary or compelling. At this point, the Court finds that the current sentence is not greater than necessary under the § 3553(a) factors.

### 3. Sexual Abuse

"A prisoner who is subjected to sexual abuse may be entitled to compassionate release." *United States v. Shelton*, No. 3:14-CR-00016, 2026 WL 196477, at *4 (W.D. Va. Jan. 26, 2026). Petitioner states that while incarcerated at Federal Prison Camp ("FPC") Bryan, she was sexually abused by a correctional officer. Pet'r's Mot. at 4. Petitioner states that not only did she experience

[2] Petitioner attached a single-page document—seemingly an employee profile—in her Reply that does not verify her place of employment. Pet'r's' Reply at 28.

this abuse herself, but that sexual misconduct at the institution has been well-documented. *Id.*; ECF No. 471-1 (referencing Beth Schwartzapfel & Erik Ortiz, *A Women's Prison Conceals a Sinister Secret: Staff Sexual Misconduct, Accusers Say*, THE MARSHALL PROJECT (Mar. 27, 2026), https://www.themarshallproject.org/2026/03/27/prison-sexual-misconduct-bryan-bop). The Government, in response, states that because Petitioner does not know if the officer was disciplined, she did not meet the high standard of an extraordinary or compelling reason. Resp. Opp. at 7. Petitioner replies that she took proper steps to report the incident, and she "is prepared to provide the Court with copies" of the documentation. Pet'r's Reply at 7.

For sexual abuse to rise to the level of an extraordinary and compelling reason, a petitioner must (1) show that the abuse was committed by a corrections officer; (2) show that the abuse included a qualifying physical act under 18 U.S.C. § 2246(2); and (3) show proof that establishes the misconduct. *Shelton*, 2026 WL 196477, at *4; *see also United States v. Maxwell*, No. CR 3:20-561-5, 2024 WL 816066, at *3 (D.S.C. Feb. 27, 2024). In 2020, Petitioner states she reported that while she was handcuffed, a correctional officer grabbed her buttocks twice in a hallway with no cameras. ECF No. 471-1 at 3.

This alleged abuse is not a qualifying physical act as defined by 18 U.S.C. § 2246(2).[3] Additionally, because Petitioner has not provided a copy of the report or any corroborating

---

[3] 18 U.S.C. § 2246 defines a "sexual act" as:

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . .

18 U.S.C. § 2246(2).

information, the Court is unable to deem the alleged incidents as an extraordinary and compelling reason to grant compassionate release. *See generally* Pet'r's Mot. Additionally, Petitioner is now on home confinement and not in custody at FPC Bryan, and therefore an early release would have minimal, if any, effect on her safety. *Cf. Shelton*, 2026 WL 196477, at *5 (denying compassionate release even when the petitioner was still incarcerated at the facility where the alleged incident occurred, because (1) the alleged abuse was not a "sexual act" under 18 U.S.C. § 2246(2); (2) the petitioner used a news article, rather than a report to support her allegations; and (3) the petitioner's claims were not substantiated by an administrative, civil, or criminal judgment); *United States v. Neris*, No. 1:18-CR-00074, 2026 WL 2676638, at *5 (W.D.N.C. Sept. 8, 2026) (in which the petitioner's allegations did not result in a conviction or finding of liability, and the petitioner further did not show that administrative proceedings were unduly delayed or that she was in imminent danger). With the provided information, the Court cannot consider Petitioner's allegations of sexual abuse as an extraordinary and compelling reason for compassionate release.

**4. Caregiver Role**

Under the Sentencing Guidelines, an extraordinary and compelling reason may exist because of "the incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b)(3)(c) (U.S. SENT'G COMM'N 2025). Petitioner requests compassionate release, in part, because of her "role as the sole caregiver for an ill mother recovering from major cardiac surgery." Pet'r's Mot. at 1. The Government responds that not only does Petitioner already reside with her mother, but Petitioner also has three siblings who reside in same state as Petitioner and her mother. Resp. Opp. at 6; PSR ¶ 77. The Government also states that Petitioner does not provide facts to support her claim of being the sole caregiver. Resp. Opp. at 6. In response, Petitioner, attached signed statements from

her brother and sisters stating that they could not serve as their mother's primary caregivers. Pet'r's Reply at 23. She also argues that home confinement prevents her from accompanying her mother during medical appointments and otherwise helping outside of the home. *Id.* at 4.

Petitioner cites a string of cases that do not support her Motion. *See generally* Pet'r's Mot. *United States v. Riley* does not mention caregiving, *United States v. Walker* and *United States v. Yates* do not exist,[4] and the petitioner's request for compassionate release was denied in *United States v. Trotman*. *See* Pet'r's Mot. at 3-4; *United States v. Riley*, No. CR 16-0402, 2020 WL 3034843, at *1 (D. Md. June 4, 2020); *United States v. Trotman*, 829 F. App'x 607 (4th Cir. 2020). The Court finds that though Petitioner's siblings are not available as full-time caregivers, they have not shown an inability to help Petitioner's mother outside the home when needed. Accordingly, the Court does not find that caregiving rises to the level of extraordinary and compelling.

**5. Section 3553(a) Factors**

The Court finds that the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The Government argues that "[t]he seriousness of defendant's offense weighs against release" and that her criminal history does not support her request. Resp. Opp. at 10. Petitioner replies that "the seriousness of the offense does not automatically require continued incarceration indefinitely"[5] and again lists her employment and education in support of her argument, which the Court cannot verify. Pet'r's' Reply at 10.

Relevant factors §3553(a) include "the nature and circumstances of the offense" and the need for the sentence "to reflect the seriousness of the offense" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). The seriousness of Petitioner's conduct in

---

[4] Petitioner cites "*United States V. Walker*, 2022 WL 17852517 (E.D. Va. Dec. 22, 2022)" and "*United States v. Yates*, 2020 WL 4537460 (E.D. Va. Aug. 6, 2020)," which do not exist in Westlaw or any other case system.

[5] Petitioner does not have an "indefinite" sentence.

running a long-term, widespread scam remains unchanged and weighs heavily against release. *See generally* PSR. Courts have consistently denied compassionate release based on the seriousness of the petitioner's offense. *Hargrove*, 30 F.4th at 198 (stating that the district court did not err in considering the seriousness of the offense when considering compassionate release); *United States v. Reid*, No. 2:02CR172-7, 2020 WL 7318266, at *3 (E.D. Va. Dec. 10, 2020) (stating that reducing the defendant's sentence would not reflect the seriousness of the offense). Both the instant offense and Petitioner's criminal history demonstrates a pattern of theft and crimes involving dishonesty from the age of 21. PSR ¶¶ 65-69. As such, the statutory sentencing factors do not support compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Petitioner's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 471 is **Denied**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, and the United States Probation Office.

**IT IS SO ORDERED**.

/s/
Raymond A. Jackson
United States District Judge

Newport News, Virginia
October 16, 2026